IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita Leeson Weinshienk

Civil Action No. 04-cv-01072-ZLW-BNB

JOHN E. LOPEZ,

      Petitioner,

v.

CARL ZENON, and
JOHN W. SUTHERS, the Attorney General of the State of Colorado,

      Respondents.

---

## ORDER ON PETITION FOR HABEAS CORPUS

---

The matter before the Court is Applicant's Amended Petition Pursuant to 28 U.S.C. Section 2254 (Doc. No. 90; Aug. 14, 2006). The Amended Petition was referred to Magistrate Judge Boyd N. Boland pursuant to 28 U.S.C. § 636(b)(1)(B). The Amended Petition originally contained two claims, but Claim Two was subsequently withdrawn by the Applicant.[1] On April 3, 2009, Magistrate Judge Boland issued a Recommendation that the remaining Claim One be denied (Doc. No. 119). Petitioner[2] timely filed an objection to the Recommendation. Respondents filed no response.

---

[1] *See* Order (Doc. No. 112; Apr. 29, 2008).

[2] John E. Lopez is variously referred to in the parties' briefs as Applicant and Petitioner. This Court will exclusively use Petitioner.

**I.     Background**

The background of the events that have led to this habeas petition are adequately described in the previous orders and opinions dealing with this crime.[3]  In brief, Petitioner is serving a life term in the Colorado Department of Corrections due to his 1998 felony murder conviction for the death of his stepfather, Ronald Lopez.

Ronald Lopez was murdered in his basement in April 1993.  As of early July 1993, no arrests had been made although Petitioner and his friend, Lawrence Sandoval, were the prime suspects.  On Wednesday, July 7, 1993, Deborah Lopez, Petitioner's mother and Ronald Lopez's wife, confronted Petitioner in the parking lot of a grocery store by exchanging heated words and striking the car Petitioner and Sandoval were driving in.  This incident was motivated by Deborah Lopez's frustration at the police's lack of progress in the case and anger with Petitioner because she felt he was not sufficiently assisting the investigation.  On Friday July 9, 1993, Deborah Lopez drove to Petitioner's house and demanded that he go talk with the police.  She initially pointed a loaded gun at Petitioner and later threatened to shoot herself if he did not cooperate with the investigation.

Petitioner agreed to talk to the police and he was subsequently interviewed by Detective Joe Dougherty of the Commerce City Police Department over the course of five days from July 12-16, 1993.  This interview occurred at the police station, was non-custodial, and was recorded on videotape.  Deborah Lopez was present in the interview

---

[3] *See* People v. Lopez, 946 P.2d 478, 480 (Colo. App. 1997); Recommendation (Doc. No. 119; Apr. 3, 2009) at 1-3, 4-11.

room for much of the interrogation.  While originally claiming to have no knowledge of the crime at the beginning of the week, by the end of the week Petitioner admitted to helping Sandoval break into his parents' basement, being present when Sandoval attacked his stepfather inside the house, and admitted to stealing his parents' safe during this attack.

After a suppression hearing in November 1993, the state court judge held that Petitioner's confession could be introduced at trial.  There is no dispute that his confession was the most important evidence presented at trial.

Petitioner alleges in Claim One that his Fifth and Fourteenth Amendment rights have been violated based on the state court's decision that his confession would not be suppressed at trial.

## II. Legal Standard

When reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court.[4]  "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 . . . . [it] does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*."[5]  The exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the state courts one full opportunity to resolve any

---

[4] *See* Estelle v. Mcguire, 502 U.S. 62, 67-68 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

[5] Coleman v. Thompson, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted).

constitutional issues by invoking one complete round of the State's established appellate review process."[6]  With respect to Claim One, Petitioner has exhausted all remedies available in Colorado courts.[7]

Because Petitioner filed his Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), that statute governs the Court's review.[8]  Under the AEDPA, a district court may only consider a habeas petition when the petitioner argues that he is "in custody in violation of the Constitution or laws or treaties of the United States."[9]

28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[10]

---

[6] O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

[7] *See* 28 U.S.C. § 2254(b)(1)(A).

[8] Cannon v. Mullin, 383 F.3d 1152, 1158 (10th Cir. 2004) (citing Rogers v. Gibson, 173 F.3d 1278, 1282 n.1 (10th Cir. 1999)).

[9] 28 U.S.C. § 2254(a).

[10] 28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1).[11] The threshold question pursuant to § 2254(d)(1) is whether Petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.[12] Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."[13] Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.[14]

If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).[15] If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.[16]

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially

---

[11] *See* Cook v. McKune, 323 F.3d 825, 830 (10th Cir. 2003).

[12] *See* Williams v. Taylor, 529 U.S. 362, 390 (2000).

[13] Id. at 412.

[14] House v. Hatch, 527 F.3d 1010, 1016 (10th Cir. 2008).

[15] *See* id. at 1018.

[16] *See* Williams, 529 U.S. at 404-05.

>indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent."[17]  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'"[18]
>
>A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.[19]  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.[20]

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one.[21]  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be unreasonable."[22]  "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the

---

[17]Maynard v. Boone, 468 F.3d 665, 669 (10th Cir. 2006) (internal quotation marks and brackets omitted) (quoting Williams, 529 U.S. at 405).

[18]Williams, 529 U.S. at 405 (citation omitted).

[19]Id. at 407-08.

[20]House, 527 F.3d at 1018.

[21]See Williams, 529 U.S. at 409-10.

[22]Id. at 411.

state court misapplied Supreme Court law."[23]  "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254."[24]

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2).[25] Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented.  Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Petitioner bears the burden of rebutting the presumption by clear and convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"[26]

Finally, the Court "owes deference to the state court's *result*, even if its reasoning is not expressly stated."[27] Therefore, the Court "must uphold the state court's summary decision unless [an] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in

---

[23]Maynard, 468 F.3d at 671.

[24]Id.

[25]*See* Romano v. Gibson, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).

[26]Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)).

[27]Aycox v. Lytle, 196 F.3d 1174, 1177 (10th Cir. 1999).

light of the evidence presented."[28] "[T]his 'independent review' should be distinguished from a full *de novo* review of the petitioner's claims."[29]

### III.     Scope of Review

Generally on review of a Magistrate Judge's Recommendation, the Court only addresses a party's specific objections.[30]  In the present case the Petitioner asks this Court to undertake a *de novo* review in addition to the specific objections identified. Normally the Court would decline this request.  However, analysis of Petitioner's specific objections required that the Court review the entire state court record provided: interrogation videotapes spanning four days, the corresponding interrogation transcripts, and the transcripts of the state court suppression hearing.  In reviewing the entirety of the evidence before the Magistrate Judge, the Court by necessity performed a *de novo* review.  Based on this review, to the extent that the Recommendation is not addressed by any of Petitioner's specific objections, this Court accepts and adopts the Magistrate Judge's findings and conclusions on those matters in their entirety.

---

[28] Id. at 1178.

[29] Id.

[30] 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the . . . recommendation[] to which objection is made.").

## IV. Analysis

### 1. Evidence (28 U.S.C. § 2254(e))

Petitioner's initial objection is to the Magistrate Judge's recitation of facts. Petitioner alleges that facts used by the state court judge at the suppression hearing are incorrect in light of newly obtained testimony.[31] Petitioner claims that the Magistrate Judge did not adequately address this argument and requests that this Court hold a hearing at which these new facts can be presented. The Court overrules this objection and denies the request for hearing.

Determinations of factual issues made by the State court are presumed to be correct unless rebutted by Petitioner with clear and convincing evidence.[32]

Petitioner argues that evidence gathered during the pendency of this case by his investigator, primarily through interviews of Deborah Lopez, directly contradicts many of the important factual findings announced at the November 1993 hearing.[33] The Court concludes that Petitioner's proposed factual findings are not backed by clear and convincing evidence. Not only was this recent evidence obtained directly in response to the issues raised in the current litigation, but the contents of this alleged evidence directly contradicts the evidence from the suppression hearing. Absent extraordinary

---

[31] *See* Objections To Magistrate's Report And Recommendation And Req. For De Novo Review (Doc. No. 120; Apr. 13, 2009) (hereinafter Objections) at 3-5 (labeled "Facts").

[32] 28 U.S.C. § 2254(e)(1).

[33] Objections at 3-5 (¶¶ 1-12 (sentence 1)).

circumstances, which do not exist here, testimony taken six months after a crime will always be more reliable then testimony taken fifteen years later.[34]

Additionally, many of the alleged facts are either arguments or conclusions that do nothing more than disagree with the state court's factual conclusions. This is not proper evidence. Therefore, the Court overrules Plaintiff's objection to the Magistrate Judge's characterization of the facts.[35]

### 2.    28 U.S.C. § 2254(d)

Therefore, given the facts as determined at the November 2003 suppression hearing, Petitioner must show the state court decision is incorrect either due to an unreasonable application of established law or an unreasonable determination of the facts. Petitioner presents two arguments. First, Petitioner claims that Deborah Lopez was an agent of the police, and her actions violated his Fifth and Fourteenth Amendment rights. Second, Petitioner claims that his confession was involuntary and its use at trial violated his Fifth and Fourteenth Amendment rights.

---

[34]The Court notes that this argument seems to be the basis of Petitioner's since withdrawn Claim Two.

[35]Petitioner also objects to the Magistrate Judge's statement that he "does not cite to the record to support his version of the facts." Recommendation at 14. Petitioner counters that he did, in fact, cite to the investigator notes when making his objections. The Court agrees with the Magistrate Judge that the law requires <u>specific citations to the state court record itself</u> rather than reference to subjective investigative notes that consist of the haphazard personal observations of an investigator.

    A.    Deborah Lopez as Agent of Police

"Constitutional violations resulting in the exclusion of evidence generally do not apply to evidence obtained by private parties or evidence resulting from the conduct of private parties."[36] "An exception to the rule exists when private persons become agents of the police by virtue of their suggestion, order, request, or participation for purposes of criminal investigation."[37] "The test as to whether a private citizen has acted as an agent of the police for purposes of criminal investigation is whether the person 'in light of all the circumstances of the case, must be regarded as an instrument or agent of the state.'"[38] Two inquiries important to answering this question are "1) whether the government knew of and acquiesced in the intrusive conduct, and 2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends."[39]

The state trial court found that Deborah Lopez admitted that the two incidents that took place the week before the interview were neither known about nor authorized by the police. Absent any governmental action, these incidents did not violate Petitioner's constitutional rights.

---

[36]Lopez, 946 P.2d at 481 (citing Colorado v. Connelly, 479 U.S. 157 (1986)).

[37]Lopez, 946 P.2d at 481 (citing People v. Henderson, 559 P.2d 1108 (Colo. 1976)).

[38]Lopez, 946 P.2d at 481 (citing Coolidge v. New Hampshire, 403 U.S. 443, 489 (1971)).

[39]Pleasant v. Lovell, 876 F.2d 787, 797 (10th Cir. 1989) (quoting United States v. Miller, 688 F.2d 652, 657 (9th Cir. 1982)).

Further, the Court adopts the reasoning of both the state court and the Magistrate Judge that Deborah Lopez was not an agent of the police during the interview. Although not typical, the presence of Deborah Lopez in the interview room can be explained by compelling reasons other than a desire to work for law enforcement: as mother of the suspect and a wife to the victim she had a vested interest in learning any new details regarding the case.

There is no evidence that Deborah Lopez was directly ordered or commanded by the police to either do or say anything. No financial relationship existed between the parties, such as a reward, and nothing was promised to Deborah Lopez. Finally, and most compelling, evidence amply indicates that it was Petitioner himself who wanted his mother present.[40] Simply because her motivations and the goals of the police overlap does not transform her into an agent of the government.[41]

This Court agrees with the Colorado Court of Appeals that including non-law enforcement individuals in a criminal suspect's interview should not become a habit as it unnecessarily complicates legal analysis.[42] However, there is nothing inherently wrong with their presence and under the totality of the circumstances in this case, this Court can not say the state court's decision was either an unreasonable application of

---

[40] *See* Record, Vol. 25 pp. 27, 34, 48, 56; Vol. 26 p. 5.

[41] *See, e.g.*, United States v. Leffall, 82 F.3d 343, 347 (10th Cir. 1996).

[42] Lopez, 946 P.2d at 482. "[W]hile the involvement of defendant's mother in his interrogation was highly unusual and we do not condone it, we conclude the trial court did not err . . . in not treating her as a police agent." Id.

established law or an unreasonable determination of the facts.  Accordingly, the Court overrules Petitioner's objection.

B.    Involuntary Confession

Petitioner's final argument is that his confession was involuntary, and its use at his trial violated his Fifth Amendment rights.

"The prosecution may not use a defendant's involuntary statements for any purpose at trial."[43]  "A statement is involuntary if coercive governmental conduct played a significant role in inducing it."[44]  "When determining voluntariness, a court should consider the totality of the circumstances."[45]

As an initial matter, the Court notes that Deborah Lopez's actions both the week prior to the interview and in the interrogation itself are irrelevant for the voluntariness analysis because she is not a governmental agent.[46]  However, even assuming *arguendo* that she was a governmental agent, the Court agrees with the state trial court that her activity during the course of the interview did not rise to an unconstitutional level.  During the initial two days of the interview when she controlled much of the

---

[43]Lopez at 481 (citing Mincey v. Arizona, 473 U.S. 385 (1978); People v. Branch, 805 P.2d 1075 (Colo. 1991)).

[44]Lopez, 946 P.2d at 481 (citing Connelly, 479 U.S. 157; People v. Dracon, 884 P.2d 712 (Colo. 1994); People v. Whalin, 885 P.2d 293 (Colo. App. 1994)).

[45]Lopez, 946 P.2d at 481 (citing People v. Breidenbach, 875 P.2d 879 (Colo. 1994)); *see also* Schneckloth v. Bustamonte, 412 U.S. 218 (1973); People v. Gennings, 808 P.2d 839, 843 (Colo. 1991).

[46]Connelly, 479 U.S. 157; Lopez, 946 P.2d at 481-82.

conversation, Petitioner steadfastly denied any personal involvement in the crime. After the second day, Deborah Lopez admitted that she became "kind of quiet" and by the last day, when Petitioner made his full confession, she was not even present in the room.[47] While Deborah Lopez undoubtedly had some influence on Petitioner, the Court agrees with the Magistrate Judge that there is "no evidence that the petitioner's will was overborne by her behavior or that his statements were the product of her pointed and heated discussions toward him."[48]

As for the law enforcement conduct, primarily the actions of Detective Dougherty, this Court agrees with and adopts both the trial court's findings and the Magistrate Judge's Recommendation that this conduct was not unconstitutional. The Court especially agrees with the trial court that in an interview of this length, there are "bound to be certain quotes or words some place . . . which can be argued are inappropriate."[49] This is precisely why the totality of the circumstances must be examined, and the totality indicates the confession was voluntary.

First, Petitioner repeatedly reiterated that his motivation for attending the interviews was largely personal. At least eleven times during the interview he brought up, on his own volition, that he wanted to figure things out for his stepfather to allow Ronald Lopez to rest in peace and be proud of his son.[50] During the first part of the

---

[47] Record, Vol. 25 p. 29.

[48] Recommendation at 18.

[49] Id. at 6.

[50] Record, Vol. 26 pp. 8-9.

14

interview, Petitioner continually reported he had "visions" of the crime, and he actively sought assistance from Dougherty to help him break this "block" and extract the details of these visions.[51] Petitioner's struggle to remember details about the night of the crime was his own creation, and "personal psychological pressures do not amount to official coercion rendering a confession involuntary."[52]

Second, analysis of the most egregious portion of the interview, when Dougherty showed Petitioner a crime scene photo of his stepfather, indicates that any effect on Petitioner's psyche was minimal at best.[53] Showing a grisly photograph to a suspect does not, by itself, implicate a constitutional violation.[54] Here, even after seeing the photos, Petitioner returned to his previous cool, calm, and collected demeanor within a short period of time. Petitioner's story did not change the remainder of that day of questioning, and he did not fully confess until several days later.[55] Whatever reaction the photos elicited, Petitioner's will was not overcome in the immediate aftermath of the viewing.[56]

---

[51] See, e.g., Record, Vol. 25 p. 30.

[52] United States v. Glover, 104 F.3d 1570, 1580 (10th Cir. 1997).

[53] The Court did not personally view the crime scene photo, but accepts the trial court's representation that the photo was "unduly gruesome." Recommendation at 9.

[54] See, e.g., Muniz v. Johnson, 132 F.3d 214, 219-20 (5th Cir. 1998), cert. denied 523 U.S. 1113 (1998).

[55] See Record, Vol. 25 pp 42-43.

[56] See, e.g., People v. Smith, 716 P.2d 1115, 1118 (Colo. 1986) ("Simply because [the defendant] became upset when she learned that the victim had died was not a sufficient basis for the trial court's conclusion that her statement was involuntary.").

Finally, the Court notes that involuntary confession cases generally involve confessions obtained within a short time frame after the crime was committed.[57] Involuntariness is based on a inability to fully and rationally comprehend the circumstances. Petitioner here had months to plan his story. At the time of the first interview he was largely aware of the evidence, and corresponding lack thereof, against him. Further, he had the opportunity to collect his thoughts when returning home after each day's interview session. He was not fatigued nor under the influence of illicit drugs. Given these factors, it would take an egregious showing of governmental coercion to find involuntariness. That egregious showing is not present in this case.

Therefore, under the totality of the circumstances, the Court cannot find that the state court's decision regarding the voluntariness of the confession was either an unreasonable application of established law or an unreasonable determination of the facts. Petitioner's objection on this matter is overruled.

**V.   Order**

Accordingly, it is

ORDERED that Petitioner's Objections To Magistrate's Report And Recommendation And Request For De Novo Review (Doc. No. 120; Apr. 13, 2009) are overruled. It is

---

[57] *See, e.g.*, People v. Humphrey, 132 P.3d 352 (Colo. 2006) (confession 6 hours after crime; suspect had no sleep, was impaired by alcohol, and informed victim died during interview); *but see* Smith, 716 P.2d at 1118 (confession made several hours after crime; suspect told victim died during interview; confession found voluntary).

FURTHER ORDERED that the Magistrate Judge's Recommendation (Doc. No. 119; Apr. 3, 2009) is accepted and adopted in its entirety. It is

FURTHER ORDERED that Applicant's Amended Petition Pursuant to 28 U.S.C. Section 2254 (Doc. No. 90; Aug. 14, 2006) is denied.

DATED at Denver, Colorado, this 27th day of January, 2010.

BY THE COURT:

_____
ZITA LEESON WEINSHIENK, Senior Judge
United States District Court